# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TYRAN SAMPSON,     :
    Plaintiff,    :
         :
  v.       :   No. 3:15-cv-359 (SRU)
         :
ANTHONY PIA, et al.,    :
    Defendants.  :

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Tyran Sampson, commenced this action by complaint filed on March 6, 2015.  The defendants are Officers Anthony Pia and Tanya Ortiz of the Hartford Police Department.  The remaining federal claims are asserted against the defendants in their individual capacities for false arrest, malicious prosecution, use of excessive force, and racial profiling.  Sampson also includes state law claims for assault and battery.  The defendants have filed a motion for summary judgment.  For the reasons that follow, the defendants' motion is granted.

I.  Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970);

*see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party").  When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48.  To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate.  *Celotex*, 477 U.S. at 322.  In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of

2

evidence to support an essential element of nonmoving party's claim).  In short, if there is no genuine

issue of material fact, summary judgment may enter.  *Celotex*, 477 U.S. at 323.

II.    Facts[1]

The defendants, Anthony Pia and Tanya Ortiz, were police officers with the Hartford,

Connecticut, Police Department at all times relevant to this action.  On June 10, 2012, Pia was on duty

wearing his full police uniform and Sampson was a passenger in a white Toyota Camry, driven by his

brother.

At about 10:10 p.m., Pia received information that the East Hartford police were pursuing a

white Toyota Camry believed to have been involved in an armed robbery in East Hartford.  Pia believed

that the occupants of the Camry being pursued by the East Hartford police were involved in the armed

robbery and, therefore, were armed and dangerous.

At about 10:27 p.m., Pia became involved in a vehicular pursuit of a white Camry through the

towns of East Hartford, Hartford, and West Hartford.  The pursuit involved numerous marked and

unmarked police vehicles with lights and sirens activated.  Sampson noticed that the Camry in which he

was riding was being pursued by the police.  Sampson's brother did not pull over and stop the vehicle

for the police.  The Camry finally stopped on I-84 after police used stop sticks to deflate the vehicle's

tires.

After the Camry stopped, Pia saw the driver immediately exit the vehicle and flee the scene on

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and supporting exhibits.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  D. Conn. L. Civ. R. 56(a)2 and 56(a)3.  Although the defendants informed Sampson of that requirement, Doc. # 43-12, many of the statements in Sampson's Local Rule 56(a)2 Statement do not contain the required citations.  I will not consider unsupported denials.  *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in [defendants' Local Rule 56(a)1 Statement] will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

foot.  He also saw a passenger, Sampson, in the vehicle.  Pia approached the passenger side of the Camry to detain the passenger.  Pia saw Sampson make hurried, reaching motions toward the driver's side of the vehicle.  Pia opened the passenger door and gave Sampson a verbal command to exit the vehicle.  At the time he opened the door, Sampson was reaching down and moving in the passenger seat.  Pia grabbed Sampson's shirt.  Sampson then kicked Pia in the forearm, causing Pia some pain.  Pia struck Sampson once in the mid-forehead area with his firearm.  Sampson placed both hands in front of his face and Pia was able to pull Sampson out of the vehicle by pulling his shirt or belt.

Upon being removed from the vehicle, Sampson was placed face down on the ground.  While on the ground, Sampson covered his face with both hands.  Sampson heard the police give him verbal commands to put his hands behind his back, but he stalled and did not comply for about a minute.  Sampson then put his hands behind his back.  He was handcuffed, helped to a standing position, escorted to a police cruiser and seated inside.  Pia did not put the handcuffs on Sampson.  Following his arrest, Sampson was taken to St. Francis Hospital where the laceration to his forehead was treated.

On June 10, 2012, Sampson was arrested and charged with one count of interfering with an officer, one count of assault on a police officer, and one count of assault in the third degree.  The following day, Sampson was arraigned and appointed a public defender.  Sampson failed to appear on May 29, 2013, and a warrant was issued for his rearrest.  On January 7, 2014, Sampson was rearrested on all charges as well as a charge for failure to appear.

In November 2014, the State filed a substitute information charging Sampson with one count of assault on a police officer and one count of interfering with a police officer, both charges involving Pia.  Following a jury trial in December 2014, Sampson was found not guilty on the charge of assault on a police officer but guilty on the lesser included charge of interfering with a police officer.  Sampson was

4

sentenced to a term of imprisonment of one year.  Sampson's appeal of the conviction remains pending.

III.   Discussion

The defendants move for summary judgment on all claims.

A.  Racial Profiling

During his deposition, Sampson agreed to withdraw his claim for racial profiling.

> Q.   Yeah, but let me just ask you this: What information do you
> have that Officer Pia and/or Officer Ortiz—let me finish
> the question—had any information on you, other than the
> description of the car?
> A.   I have none.
> Q.   Okay.  So is it fair to say that that racial profiling claim you
> are not pursuing that?
> A.   No, I am not pursuing that.

Sampson Dep. at 87, ll. 19–25 & 88, l. 1 (doc. # 43-4).  Sampson now denies withdrawing the claim.

Courts in this circuit generally do not accept deposition statements withdrawing a claim unless

the plaintiff reaffirms the withdrawal by failing to reference the claim in summary judgment opposition

papers or where the claim lacks any evidentiary support.  *See, e.g.*, *Davis v. Department of Educ. of City*

*of New York*, 2012 WL 4713610, at *6 (S.D.N.Y. Sept. 28, 2012) (accepting explicit deposition

statement that represented plaintiff wanted to withdraw First Amendment claim where plaintiff did not

dispute statement in defendants' brief that claim was withdrawn); *Fox v. National R.R. Passenger Corp.*

*(Amtrak)*, 2009 WL 425806, at *7 n.4 (N.D.N.Y. Feb. 19, 2009) (not addressing retaliation claim

because during deposition plaintiff agreed to withdraw claim on ground that claim had been litigated in

prior lawsuit).

Although Sampson clearly stated during his deposition that he was not pursuing a racial profiling

claim, he now denies that he has withdrawn his racial profiling claim.  In light of Sampson's *pro se*

status, the Court will not consider the deposition statement as a voluntary withdrawal of the claim.

5

Regardless whether the claim should be considered withdrawn, Sampson "cannot defeat a summary judgment motion by responding with affidavits recanting . . . earlier testimony." *Margo v. Weiss*, 213 F.3d 55, 60–61 (2d Cir. 2000) (internal citations omitted).

Racial profiling claims are analyzed as violations of the Equal Protection Clause.  To prevail, Sampson must allege that the defendants intentionally discriminated against him on the basis of his race. Such discriminatory intent can be established by direct evidence or by circumstantial or statistical evidence.  *See Gilbert v. Newton*, 2015 WL 3755955, at *4 (D. Conn. June 15, 2015) (citations omitted).

The undisputed evidence in this case is that the defendants pursued the white Camry in which Sampson was a passenger because they received information that a white Camry was connected to an armed robbery.  Sampson has presented no evidence, or even factual allegations, suggesting that the defendants pursued the vehicle based on Sampson's race.  In his memorandum, he merely states that the facts surrounding the claim remain in dispute.  In his affidavit, he states:  "Due to the fact that I had not committed any crime, I felt racially profiled and targeted."  Pl.'s Aff. at ¶ 4, Ex. A (doc. # 54).  During his deposition, Sampson conceded that he had no evidence that the defendants were aware of his race when they pursued the Camry.  I conclude that Sampson's racial profiling claim is conclusory and speculative and subject to dismissal pursuant to 28 U.S.C. § 1915A(b)(1).  Because the claim lacks any evidentiary support, I accepts the deposition statement withdrawing the claim.  The defendants' motion for summary judgment is granted on the racial profiling claim.

B.  Excessive Force against Ortiz

The defendants also contend that Sampson withdrew his excessive force claim against Ortiz during the deposition.  Again, Sampson denies withdrawing the claim.

6

To prevail on an excessive force claim against a police officer, Sampson must show that the amount of force used was objectively unreasonable with respect to when or how the force was applied, and that, as a result of the use of force, he suffered some compensable injury. *See Graham v. Connor,* 490 U.S. 386, 396 (1989); *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004). Whether a given quantum of force is excessive depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396.

During his deposition, Sampson denied that Ortiz kicked him. *See* Sampson Dep. at 74, ll. 17–19 (doc. # 43-4) ("What [Ortiz] stated that she kicked me, I never got a kick, no nothing."). Sampson also stated that he was asserting an excessive force claim only against Pia:

> Q.   Now, are you claiming excessive force against Officer Ortiz, because you didn't say that she hit you?
> A.   No, Officer Pia.
> Q.   Okay. So Officer Pia only?
> A.   Um-hmm.

*Id.* at 88, ll. 8–12. Sampson states, in his memorandum, that he learned through discovery that Ortiz kicked him twice in the neck and upper shoulder area. He argues that Ortiz's admission is sufficient to overcome the motion for summary judgment on the excessive force claim against her. Sampson also avers that he regained consciousness as a result of Ortiz striking him in the neck and shoulder. Pl.'s Aff. at ¶ 10, Ex. A (doc. # 54).

In his Local Rule 56(a)2 Statement, Sampson says he did not see Ortiz kick him but she "self-admittedly states that she assaulted the plaintiff twice kicking him once on his left arm, then again in his shoulder area." The only citations provided are Sampson's affidavit and the use of force report. *Id.*;

Local Rule 56(a)2 Statement at ¶¶ 26, 44 (doc. # 54).  The use of force report completed by Ortiz ("Ortiz Report") is evidence that some force was used.  Use of Less Lethal Force Report, Ex. D (doc. # 54). The Ortiz Report itself does not identify the type of force used and provides minimal description of the incident.  Nothing in the Ortiz Report indicates that Ortiz kicked Sampson.  Accordingly, Samson may not rely on the Ortiz Report as evidence that Ortiz "self-admittedly states" that she kicked him twice. The Ortiz Report only establishes that Ortiz used some degree of force against a suspect who was later convicted of interfering with a police officer during that same incident.  The presence of the use of force report is not evidence that Ortiz's use of force was unreasonable.  Moreover, the Ortiz Report states that there were no injuries to Sampson as a result of Ortiz's use of force.  *Id.*  The failure to provide evidence of compensable injuries as a result of a particular defendant's use of force is fatal to Sampson's excessive force claim against that individual.  *Graham*, 490 U.S. at 396; *Maxwell*, 380 F.3d at 108. Because Sampson does not point to any evidence, including his personal knowledge of the events, to dispute the evidence in the Ortiz Report that Ortiz's use of force caused no injuries to Sampson, Sampson has failed to provide sufficient evidence to create an issue of fact on the excessive force claim against Ortiz.

Even if Sampson's affidavit can be construed as providing evidence that Ortiz used excessive force against him, such self-serving assertions are insufficient to create a genuine issue of material fact to defeat a motion for summary judgment.  *Trans–Orient Marine Corp. v. Star Trading & Marine, In*c., 925 F.2d 566, 572 (2d Cir. 1991) (recognizing that "a party may not . . . create a material issue of fact" to defeat motion for summary judgment by making self-serving assertions that contradict prior sworn testimony).  At his deposition, Sampson was under oath.  Although a *pro se* party will generally not be forced to withdraw claims that, absent the advice of counsel, he withdraws during a deposition, he may

8

not use self-serving statements to avoid summary judgment that is based on prior sworn testimony. Accordingly, summary judgment is granted on the claim of excessive force by Ortiz.

    C.  <u>False Arrest and Malicious Prosecution</u>

        Sampson brings malicious prosecution and false arrest claims against both defendants.  To assert a false arrest or malicious prosecution claim under section 1983, Sampson must show that his Fourth Amendment rights were violated and establish the elements of the false arrest or malicious prosecution claim under state law.  *See Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012).

        A malicious prosecution claim "does not accrue until the criminal proceedings have terminated in the plaintiff's favor."  *Heck v. Humphrey*, 512 U.S. 477, 489 (1994).  Indeed, favorable termination is one of the elements of a claim for malicious prosecution under Connecticut law.  *See Acevedo v. Sklarz*, 553 F. Supp. 2d 164, 172 (D. Conn. 2008).  In addition, Sampson must allege that the prosecution terminated in his favor to state a claim for false arrest under Connecticut law and section 1983.  *See Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (holding that district court did not err in granting summary judgment on false arrest claims because "the Court [has] expressly held, invoking Connecticut law, that favorable termination is an element of 'a section 1983 claim sounding in false imprisonment or false arrest'") (quoting *Roesch v. Otarola*, 980 F.2d 850, 853–54 (2d Cir. 1992)).

        The substitute information on which Sampson was tried included two counts, assault on a police officer and interfering with a police officer.[2]  Sampson was acquitted of assault on a police officer and convicted of interfering with a police officer.  Where a jury acquits on some charges but convicts on others, it is not clear whether there is a favorable termination to support a false arrest or malicious

---

[2] In opposition to the motion for summary judgment, Sampson focuses on the armed robbery which precipitated the pursuit of the Camry, and argues that he does not fit the description of either person involved in the robbery.  Because Sampson was not arrested or prosecuted for robbery, his argument is without merit.

prosecution claim.

In such circumstances, the Second Circuit requires the district court to determine whether the acquittal and conviction charges were "distinct offenses involving distinct allegations." *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989). The court must also determine whether "the structure of the challenged prosecution, when viewed in its entirety, suggests the possibility that the defendant secured a charging instrument 'for an easily provable minor offense and added to it more serious charges with the hope that proof of probable cause on the lesser charge would insulate the prosecutor from liability for malicious prosecution on the unproved serious ones.'" *Evans v. City of New York*, 2015 WL 1345374, at *20 (E.D.N.Y. Mar. 25, 2015) (quoting *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996)). In addition to considering the relative seriousness of the conviction and acquittal offenses, the district court also should consider whether the elements of the two crimes are different, whether one is a lesser included offense of the other and whether the actions underlying the charges were directed at different people. *Janetka*, 892 F.2d at 190.

Sampson was charged with assault on a police officer and interfering with a police officer. Assault on a police officer is defined in relevant part as follows:

> A person is guilty of assault of public safety . . . personnel when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in performance of his or her duties, (1) such person causes physical injury to such peace officer . . . , or (2) such person throws or hurls, or causes to be thrown or hurled, any rock, bottle, can or other article, object or missile of any kind capable of causing physical harm, damage or injury, at such peace officer . . . .

Conn. Gen. Stat. § 53a-167c(a). Assault on a police officer is a class C felony. Conn. Gen. Stat. § 53a-167c(b). Interfering with a police officer is defined as follows: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the

performance of such police officer's . . . duties." Conn. Gen. Stat. § 53a-167a(a).  Interfering with a police officer is a class A misdemeanor, unless the violation causes death or serious physical injury of another person.  Conn. Gen. Stat. § 53a-167a(b).

Sampson was acquitted on the more serious charge.  However, the elements of the two charges are similar because both involve actions designed to prevent a police officer from performing his duties.  Both charges were based on Sampson's conduct toward Pia, and the Connecticut Appellate Court has held that interfering with a police officer is a lesser included offense to assault on a police officer.  *See State v. Flynn*, 14 Conn. App. 10, 18–19 (1988) ("[A] person could not commit the greater offense of assault on a peace officer without having committed the lesser offense of interfering with a peace officer.  It is theoretically impossible to have a situation where one, with intent to prevent the performance of duties of a peace officer, either causes physical injury to an officer or throws or hurls a bottle or other object at an officer capable of causing harm without at the same time obstructing, hindering, resisting or endangering that officer in the performance of his duties.").

In opposition to the motion for summary judgment, Sampson attempts to separate the two charges.  He argues that the assault on a police officer charge was based on his extraction from the car and the interfering with a police officer charge was based on his stalling when ordered to put his hands behind his back to be handcuffed.  Both charges, however, involve Pia and the evidence presented shows that Pia was not involved in handcuffing Sampson.  Thus, Sampson's argument lacks merit.

Because the conviction offense was a lesser included offense of the acquittal offense and both were based on actions taken toward Pia, I conclude that the acquittal on the charge of assault on a police officer is not a favorable termination for the purposes of asserting false arrest and malicious prosecution claims.  The defendants' motion for summary judgment is granted on the claims for false arrest and

malicious prosecution.

    D.  <u>Excessive Force Against Pia</u>

The defendants argue that the excessive force claim against Pia also is barred by the Supreme Court's decision in *Heck v. Humphrey*.  In *Heck*, the Court held that that a section 1983 action is barred if a decision in the plaintiff's favor would call into question the validity of a prior criminal conviction. 512 U.S. at 489.  If a determination favorable to the plaintiff in a section 1983 action "would necessarily imply the invalidity of his conviction or sentence," the plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid before he can recover damages under section 1983.  512 U.S. at 487.

Sampson's excessive force claim is not precluded by *Heck* only so long as Sampson can prevail without "negat[ing] an element" of the interfering with a police officer charge.  *Id.* at 487 n.6; *see also Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000) (precluding plaintiff's excessive force claim if "facts actually determined in his criminal convictions that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit").  To determine what was necessarily decided by a prior criminal case, the court may examine the record of the criminal trial.  *Id.*

In the instant suit, Sampson alleges that Pia used excessive force, including manhandling Sampson, hitting him in the face with his firearm and beating him about the neck and upper torso, while extracting him from the car to effect his arrest.  Sampson's allegations are supported by his affidavit. The undisputed facts establish only that Pia struck Sampson in the forehead with his firearm in the course of Pia's attempts to extract Sampson from the car.  Following the arrest, Sampson was taken to the hospital for treatment of the cut on his forehead.  *See* Compl. (doc. # 1-1) (Hospital records); Trial

Tr. at 91 (doc. # 43-10).  In order to prevail on his excessive force claim, Sampson must show that Pia's use of force was unreasonable.  *See Graham*, 490 U.S. at 396.  The claim will be barred by *Heck* if a finding that Pia's use of force was unreasonable is incompatible with the facts necessarily determined by the jury at Sampson's criminal trial.

At the conclusion of Sampson's criminal trial, the jury was instructed on the law regarding the crime of interfering with a police officer.  The Court instructed the jury that "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer in the performance of such peach officer's duties."  Trial Tr. at 12, ll. 20–24 (doc. # 43-8).  The Court instructed the jury that a necessary element of the offense was that the defendant's conduct "occurred while the officer was in the performance of his duties."  *Id.* at 13, ll. 2–4.  To determine whether the Sampson's conduct occurred while Pia was in the performance of his duties, the Court instructed the jury that they "must consider another provision in [the] law that justifies the use of physical force by officers in making an arrest."  *Id.* at 14, ll. 17–19.  The Court informed the jury that "an officer is justified in using physical force upon another person when and to the extent that he reasonably believes such to be necessary to effect an arrest . . . ."  *Id.* at 14, ll. 20–23.  Finally, at the conclusion of its discussion of the element of "performance of official duties," the Court instructed the jury as follows: "If you find that the force used by [Pia] was not reasonable, you will find that Hartford Police Detective Pia was not acting within the performance of his official duties while attempting to arrest the defendant."  *Id.* at 16, ll. 8–12.  The Court did not instruct the jury on the possibility that Pia acted at times within the performance of his official duties and at other times outside the scope of such duties.  The Court most likely declined to issue such an instruction because the interaction between Pia and Sampson was limited to the discrete action of Pia removing Sampson from his vehicle.  *See* Trial Tr. at

13

79 (doc. # 43-10) (once Pia removed Sampson from the car, other officers assisted and secured him in handcuffs).  Accordingly, the jury was forced to determine whether Pia was acting within the scope of his duties during the entire interaction with Sampson.  If Pia acted outside the scope of his official duties during the interaction, one of the critical elements of the offense of interference with a police officer would not have been satisfied and the jury would have been required to render an acquittal.  By finding Sampson guilty of interfering with a police officer, the jury necessarily determined that Pia acted within his official duties, and thus reasonably during the encounter.

To establish an excessive force claim against Pia under section 1983, Sampson must show that Pia used an objectively unreasonable amount of force causing a compensable injury.  *See Graham*, 490 U.S. at 396.  If Sampson were to prevail on his excessive force claim, it would negate the jury finding that Pia used reasonable force.  This is not a case like *VanGilder*, in which the Court held it was possible for the plaintiff to have been subject to the use of unreasonable force notwithstanding the fact that he was convicted of resisting arrest.  *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006).  A necessary aspect of Sampson's guilty verdict was the jury determination that Pia used reasonable force during the encounter.  In other words, "facts actually determined in [plaintiff's] criminal convictions that were necessary to the judgment of conviction are incompatible with" plaintiff's current civil allegations.  *Sullivan*, 225 F.3d at 166.  Thus, Sampson's excessive force claim is barred by *Heck*.  The defendants' motion for summary judgment is granted on the excessive force claim against Pia.

E.  <u>State Law Claims</u>

Finally, Sampson asserts state law claims against both defendants for assault and battery.  The defendants argue that the assault and battery claims against Pia are barred under *Heck v. Humphrey*.  The Supreme Court held in *Heck*, that a section 1983 action is barred if a decision in the plaintiff's favor

14

would call into question the validity of that conviction. 512 U.S. at 489.  The Supreme Court made no reference to state law claims.

The defendants need not rely on *Heck* in order to establish that Sampson is barred from claiming that Pia is liable for assault and battery.  Under Connecticut law, "collateral estoppel prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action, such as a criminal proceeding." *Sanabria v. Martins*, 568 F. Supp. 2d 220, 224 (D. Conn. 2008) (quoting *Aetna Cas. & Sur. So. v. Jones*, 220 Conn. 285, 296 (1991)) (internal quotation marks omitted). The Connecticut Appellate Court has concluded "that a prior conviction estops a party in a later civil suit from contesting facts necessarily established in the criminal proceeding." *Griffin v. Parker*, 22 Conn. App. 610, 623 (1990), *rev'd on other grounds*, 219 Conn. 363 (1991) (internal quotation marks and alterations omitted).  In many ways, the analysis of the application of collateral estoppel in a civil suit based on a prior criminal matter is similar to that which I already performed with respect to the application of *Heck*.

To determine whether collateral estoppel prohibits Sampson from asserting an excessive force claim against Pia, I must compare the facts necessarily established in Sampson's prior criminal proceeding with the facts that Sampson asserts in the current suit.  In the instant civil suit, Sampson asserts that Pia is liable for assault and battery under state law because Pia's use of force against him was unreasonable.  Connecticut, by statute, has established the circumstances under which a police officer may lawfully use force in making an arrest.  *See* Conn. Gen. Stat. § 53a-22(b) (police officer "is justified in using physical force upon another person when and to the extent that he or she reasonably believes it necessary to . . . [e]ffect an arrest . . . of a person whom he or she reasonably believes to have committed an offense . . . or to defend himself or herself or a third person from the use or imminent use

15

of physical force while effecting or attempting to effect an arrest . . . .").  Pia will not be liable for assault and battery if he reasonably believed the force he used was necessary to effect Sampson's arrest or defend himself or a third person from the use or imminent use of physical force while effecting or attempting to effect Sampson's arrest.

The events giving rise to the criminal case and the current suit are identical.  As discussed above, the jury in Sampson's criminal case was instructed that it could not find Sampson guilty unless it determined that Pia was acting within the scope of his official duties during his encounter with Sampson.  The jury was also instructed that it could only find that Pia was acting in his official capacity if the forced he used was reasonable under the circumstances.  Accordingly, to convict Sampson, the jury necessarily determined that Pia's use of force was reasonable under the circumstances.

Sampson's assertion in the current suit that Pia is liable for assault and battery because his use of force during the course of the arrest was unreasonable is in direct contradiction to a fact that the jury necessarily determined in his criminal case.  For that reason, Sampson barred by collateral estoppel from bringing an assault and battery claim against Pia.

IV.   Conclusion

For the foregoing reasons, the defendants' motion for summary judgment [**Doc. # 43**] is

**GRANTED**.

**SO ORDERED.**

Dated this 27th day of March 2017, at Bridgeport, Connecticut.


    /s/STEFAN R. UNDERHILL
   Stefan R. Underhill
   United States District Judge

16